**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Monica Valenzuela,<br><br>    Plaintiff,<br><br>vs.<br><br>Commissioner of Social Security Administration,<br><br>    Defendant. | No. CV 17-265-TUC-LAB<br><br>**ORDER** |

The plaintiff filed this action for review of the final decision of the Commissioner for Social Security pursuant to 42 U.S.C. § 405(g). (Doc. 1, p. 1); *see also* 42 U.S.C. §1383(c)(3)

The Magistrate Judge presides over this case pursuant to 28 U.S.C. § 636(c) having received the written consent of both parties. *See* FED.R.CIV.P. 73; (Doc. 22)

The court finds that the final decision of the Commissioner at step five of the disability analysis is supported by substantial evidence and free from legal error.

The ALJ gave specific and legitimate reasons for discounting the opinion of the treating physician. She gave clear and convincing reasons for discounting the claimant's subjective testimony of disability. Her step 2 determination was not reversible error.

PROCEDURAL HISTORY

On March 18, 2013, Valenzuela filed for supplemental security income pursuant to Title XVI of the Social Security Act. (Tr. 130) She alleged disability beginning on January 1, 2012, due to fibromyalgia, PTSD, depression/anxiety, chronic migraine, carpal tunnel, chronic

spondylosis w/out myelopathy, cervical radiculopathy, and neuralgia neuritis. (Tr. 130, 164)

Her claims were denied initially (Tr. 92-95) and upon reconsideration (Tr. 96-98). Valenzuela requested review and appeared with counsel at a hearing before Administrative Law Judge (ALJ) Jasmin Elias on December 2, 2015. (Tr. 37) In her decision, dated February 4, 2016, the ALJ found Valenzuela was not disabled. (Tr. 19-29) Valenzuela appealed, and on April 10, 2017, the Appeals Council denied review making the decision of the ALJ the final decision of the Commissioner. (Tr. 1-3) Valenzuela subsequently filed this action appealing that decision. (Doc. 1)

Claimant's Work History and Medical History

Valenzuela was born in July of 1963. (Tr. 42) She was 52 years old when the ALJ issued her decision in February of 2016. (Tr. 29, 42)

Valenzuela graduated from high school and has some college education. (Tr. 43) She worked briefly as a bartender, a concrete form setter, and a grocery stock worker. (Tr. 165) None of her jobs qualifies as "past relevant work."

*Mental Impairment*

In December of 2013, a psychologist identified as G.R.L., Ph.D., reviewed the medical record for the disability determination service and offered an opinion of Valenzuela's mental limitations. (Tr. 65) G.R.L. diagnosed Valenzuela with affective disorder and anxiety disorder. (Tr. 64) G.R.L. then evaluated Valenzuela's "B" listing criteria, which gauge the severity of her limitations. *See* 20 C.F.R. § 416.920a(c)(3). G.R.L. found Valenzuela has "mild" restrictions of her daily activities; "moderate" difficulties in maintaining social functioning; "moderate" difficulties in maintaining concentration, persistence, or pace; and no evidence of decompensation. (Tr. 64) G.R.L. further opined that the medical evidence did not establish the presence of the "C" criteria, which are an alternative gauge of the extent of her mental impairment. (Tr. 65)

G.R.L. found Valenzuela is markedly limited in her ability to understand and remember detailed instructions. (Tr. 69) She is markedly limited in her ability to carry out detailed instructions and moderately limited in her ability to maintain attention and concentration for extended periods. (Tr. 69) She is markedly limited in her ability to interact appropriately with the general public. (Tr. 70) G.R.L. opined that Valenzuela can perform simple tasks with routine supervision. (Tr. 70) She can relate to supervisors and peers but cannot relate to the general public. (Tr. 70)

In April of 2014, Burnard Pearce, Ph.D., reviewed the medical record for the disability determination service and offered an opinion of Valenzuela's mental limitations. (Tr. 81) He diagnosed Valenzuela with affective disorder, anxiety disorder, and also substance addiction disorder. (Tr. 79) Otherwise, he agreed with G.R.L.'s evaluation of Valenzuela's mental impairments and her functional limitations. (Tr. 83-86)

In January of 2014, treating physician Donald R. Smith, M.D., completed a Medical Source Statement – Mental. (Tr. 823) He opined that Valenzuela's ability to understand and remember detailed or complex instructions was "poor." (Tr. 823) Also "poor" was her ability to attend and concentrate; ability to work without supervision; and ability to interact with the public, coworkers, or supervisors. (Tr. 824) Also "poor" was her ability to adapt to changes in the workplace. (Tr. 824) These limitations, he opined, are caused by Valenzuela's chronic pain and medications. (Tr. 824) He noted that her medications "cause mental and physical slowing." (Tr. 824) Smith's recommendation was made part of the record in January of 2015. (Tr. 823) Apparently, his treatment records were never made part of the case medical record. (Tr. 275)

In December of 2015, Janet San Nicholas, MC, NCC, LPC, wrote a letter evaluating Valenzuela's mental condition. She stated that Valenzuela "has been diagnosed with Post Traumatic Stress Disorder, the symptoms of which are exacerbated by the severe, constant, physical pain of Fibromyalgia, and resulting physical trauma from years of abuse and a bicycle accident." (Tr. 1253) "The combination of these mental and physical symptoms results in drastic restrictions to her everyday life functioning in all aspects of her life." *Id.* "Ms.

Valenzuela is unable to sit through a full hour session as she needs to constantly shift positions ending up lying down as this is the least painful position for her." *Id*. "She has no patience for people or things she encounters as she is constantly battling the physical pain and the resulting anger and frustration, anxiety and sadness that results." *Id*. San Nicholas completed a Mental Residual Functional Capacity Assessment in which she opined that Valenzuela is "markedly limited" in all areas of mental functioning. (Tr. 1254-55)

*Physical Impairment*

In December 2013, Charles Clayton, M.D., reviewed the medical records for the disability determination service and offered an opinion of Valenzuela's physical limitations. (Tr. 68) Clayton opined that Valenzuela could lift 20 pounds occasionally and 10 pounds frequently. (Tr. 67) She could sit, stand, and/or walk for 6 hours in an 8-hour day. (Tr. 67) She has no other vocational limitations. Clayton's opinion suggests that Valenzuela can perform light work. *See* 20 C.F.R. § 416.967(b).

In October of 2015, treating physician Donald R. Smith, M.D., completed an evaluation entitled Medical Work Tolerance Recommendations. (Tr. 273) Smith opined that Valenzuela could stand for 10 minutes at one time and for 2 hours total. (Tr. 273) She could sit for 30 minutes at one time and for 4 hours total. (Tr. 273) She could walk for 10 minutes at one time and for 60 minutes total. (Tr. 273) Smith opined that Valenzuela could not lift 10 pounds occasionally. (Tr. 273) She could not climb ladders or stairs. (Tr. 273) Smith opined that Valenzuela would miss 30 days of work per month. (Tr. 274) He documented further postural limitations, manipulative limitations, and environmental limitations. (Tr. 274) Smith's opinion suggests that Valenzuela cannot perform even sedentary work. *See* 20 C.F.R. § 416.967. Smith's recommendation was made part of the record in December of 2015. (Tr. 272) Apparently, his treatment records were never made part of the case medical record. (Tr. 275)

In April of 2014, Herbert Meites, M.D., reviewed the medical record for the disability determination service and considered the severity of Valenzuela's physical impairments. (Tr. 83-84) Meites agreed with the functional limitations given by Clayton. *Id*.

*Hearing*

On December 2, 2015, Valenzuela appeared with counsel at a hearing before the ALJ. (Tr. 37) The ALJ noted that her amended onset date was January 1, 2012. (Tr. 37)

On the date of the hearing, Valenzuela was 52 years old. (Tr. 42) She graduated from high school and attended some college. (Tr. 43) Valenzuela worked as a bartender and performed construction work, fitness work, and grocery work. (Tr. 43) None of her prior employment qualifies as "past relevant work." (Tr. 53)

Valenzuela testified that she could not work due to "severe pain in my neck and into my arms and my legs and my lower back and that radiates a pain up and down the right side of my body." (Tr. 43) Also, she suffers from "severe headaches." (Tr. 43) She has pain when she lifts a gallon of milk. (Tr. 45) Valenzuela testified that she can sit comfortably for five minutes. (Tr. 46) She can stand in one place for five minutes. (Tr. 46)

The ALJ took testimony from vocational expert Sonia Peterson. (Tr. 52) The ALJ proposed a hypothetical person with Valenzuela's age, education, and past relevant work who could perform light work; could not climb ladders, ropes, or scaffolds; who must avoid concentrated exposure to hazards such as moving machinery and unprotected heights; and who could perform work limited to routine, simple, and repetitive tasks with no interaction with the public and only occasional interaction with coworkers. (Tr. 53-54) Peterson testified that such a person could work as a cleaner/housekeeping, 323.687-014, or silver wrapper, 318.687-018, or photocopy machine operator, 207.685-014. (Tr. 54)

CLAIM EVALUATION

Social Security Administration (SSA) regulations require that disability claims be evaluated pursuant to a five-step sequential process. 20 C.F.R. § 416.920. The first step requires a determination of whether the claimant is engaged in substantial gainful activity. 20 C.F.R. § 416.920(a)(4). If so, then the claimant is not disabled, and benefits are denied. *Id.*

1 | If the claimant is not engaged in substantial gainful activity, the ALJ proceeds to step two, which requires a determination of whether the claimant has a severe impairment or combination of impairments. 20 C.F.R. § 416.920(a)(4). In making a determination at step two, the ALJ uses medical evidence to consider whether the claimant's impairment significantly limits or restricts his or her physical or mental ability to do basic work activities. 20 C.F.R. § 416.920(c). *Id.* If the ALJ concludes the impairment is not severe, the claim is denied. *Id.*

Upon a finding of severity, the ALJ proceeds to step three, which requires a determination of whether the impairment meets or equals one of several listed impairments that the Commissioner acknowledges are so limiting as to preclude substantial gainful activity. 20 C.F.R. § 416.920(a)(4); 20 C.F.R. Pt. 404, Subpt. P, App.1. If the claimant's impairment meets or equals one of the listed impairments, then the claimant is presumed to be disabled, and no further inquiry is necessary. *Ramirez v Shalala,* 8 F.3d 1449, 1452 (9th Cir. 1993). If the claimant's impairment does not meet or equal a listed impairment, evaluation proceeds to the next step.

The fourth step requires the ALJ to consider whether the claimant has sufficient residual functional capacity (RFC)[1] to perform past relevant work. 20 C.F.R. § 416.920(a)(4). If yes, then the claim is denied. *Id.* If the claimant cannot perform any past relevant work, then the ALJ must move to the fifth step, which requires consideration of the claimant's RFC to perform other substantial gainful work in the national economy in view of claimant's age, education, and work experience. 20 C.F.R. § 416.920(a)(4).

### The ALJ's Findings

At step one of the disability analysis, the ALJ found Valenzuela "has not engaged in substantial gainful activity since March 22, 2013, the application date. . . ." (Tr. 21) At step

---

[1] Residual functional capacity is defined as that which an individual can still do despite his or her limitations. 20 C.F.R. § 416.945.

two, she found Valenzuela "has the following severe impairments: degenerative disc disease; osteoarthritis; carpal tunnel syndrome; affective disorder and anxiety disorder. . . ." (Tr. 21)

At step three, the ALJ found Valenzuela's impairments did not meet or equal the criteria for any impairment found in the Listing of Impairments, Appendix 1, Subpart P, of 20 C.F.R., Part 404. (Tr. 22)

The ALJ then analyzed Valenzuela's residual functional capacity (RFC). She found "the claimant had the residual functional capacity to perform the full range of light work as defined in 20 CFR 416.967(b), except [she was limited to] work that would never require climbing ladders, ropes and scaffolds, and work that would avoid concentrated exposure to workplace hazards, such as moving machinery and unprotected heights." (Tr. 22) "She can do work that is limited to routine simple repetitive tasks with no interaction with the public and only occasional interaction with co-workers." (Tr. 22)

At step four, the ALJ found Valenzuela has no past relevant work. (Tr. 27) She noted that Valenzuela was 49 years old on the date of the application. (Tr. 28) At step five, the ALJ found, based on the testimony of the vocational expert, that Valenzuela can work as a cleaner/housekeeping, 323.687-014, or silver wrapper, 318.687-018, or photocopy machine operator, 207.685-014. (Tr. 28-29)

STANDARD OF REVIEW

To qualify for disability benefits the claimant must demonstrate, through medically acceptable clinical or laboratory standards, an inability to engage in substantial gainful activity due to a physical or mental impairment that can be expected to last for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). "[A] claimant will be found disabled only if the impairment is so severe that, considering age, education, and work experience, that person cannot engage in any other kind of substantial gainful work which exists in the national economy." *Penny v. Sullivan,* 2 F.3d 953, 956 (9th Cir. 1993).

The findings of the Commissioner are meant to be conclusive. 42 U.S.C. §§ 405(g), 1383(c)(3). The decision to deny benefits "should be upheld unless it contains legal error or is

- 7 -

not supported by substantial evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* It is "more than a mere scintilla but less than a preponderance." *Id.*

"Where evidence is susceptible to more than one rational interpretation, the [Commissioner's] decision should be upheld." *Orn*, 495 F.3d at 630. "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Id.*

The Commissioner need not accept the claimant's subjective testimony of disability, but if she decides to reject it, "she must provide specific, cogent reasons for the disbelief." *Lester v. Chater,* 81 F.3d 821, 834 (9th Cir. 1995). "[W]ithout affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009). "If an ALJ finds that a claimant's testimony relating to the intensity of [her] pain and other limitations is unreliable, the ALJ must make a credibility determination citing the reasons why the testimony is unpersuasive." *Id*. "The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints." *Id*. "In this regard, questions of credibility and resolutions of conflicts in the testimony are functions solely of the [Commissioner]." *Id*.

Discussion: Migraines

Valenzuela argues first that the ALJ erred at step two of the disability determination when she found that her migraine headaches were not a severe impairment. (Doc. 16, pp. 15-17) She maintains that the opinion of her treating physician, Smith, and the assessment of her pain specialist, Eross, establish that "her migraines/headaches are a severe MDI [medically determinable impairment] which impairs her ability to function." (Tr. 16, p. 16)

"At step two of the five-step sequential inquiry, the [ALJ] determines whether the claimant has a medically severe impairment or combination of impairments." *Smolen v. Chater*,

80 F.3d 1273, 1289-90 (9th Cir. 1996). "[A]n impairment is not severe if it does not significantly limit the claimant's physical ability to do basic work activities." *Id.* at 1290.

"Basic work activities" are "the abilities and aptitudes necessary to do most jobs" such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling." 20 C.F.R. § 416.922.

"[T]he step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual[']s ability to work.'" *Id.*

At step four, the ALJ must consider all of the claimant's impairments together, the severe and the non-severe, and determine the claimant's residual functional capacity. 20 C.F.R. § 416.945(e).

In this case, the ALJ found at step two that Valenzuela "has the following severe impairments: degenerative disc disease; osteoarthritis; carpal tunnel syndrome; affective disorder and anxiety disorder. . . ." (Tr. 21) She did not include migraines on that list. She did, however, consider the medical record from the Arizona Neurological Institute where Valenzuela received treatment for pain including migraines. (Tr. 21); *see* (Tr. 328-434)

The ALJ recognized that Valenzuela "was assessed with migraine headache with complicating overuse of Percocet and Excedrin." (Tr. 21) She noted, however, that "there was no evidence of any intercranial problem" and "a brain MRI showed negative findings." (Tr. 21) Valenzuela was treated with "occipital nerve block secondary to headaches" and prescribed Topomax at one point. (Tr. 21) The treatment record states that "[b]y December 18, 2012, claimant's headaches were stable." (Tr. 21) "On February 8, 2013, claimant's headaches continued to be stable." (Tr. 21) "On March 7, claimant's headaches were improving." (Tr. 21) "On May 9, 2013, claimant's headaches were stable." (Tr. 22) "On July 15, 2013, CT of the head showed negative findings." (Tr. 22)

Based on this medical evidence, the ALJ found that Valenzuela's migraines were not a severe impairment. One could argue to the contrary that such an extensive medical record is

inconsistent with a finding that Valenzuela's migraines had only a de minimis effect on her ability to work. But even if the ALJ erred at this point, the error did not affect the ALJ's subsequent analysis. When the ALJ evaluated Valenzuela's residual functional capacity (RFC), she considered all of her impairments, the severe and the non-severe. (Tr. 22) The ALJ found, among other things, that Valenzuela's pain would restrict her ability to perform complex tasks and adversely affect her ability to interact with others. (Tr. 28) Assuming the ALJ erred at step two, this error was harmless. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) ("Even assuming that the ALJ erred in neglecting to list the bursitis at Step 2, any error was harmless" where "the ALJ considered any limitations posed by the bursitis at Step 4.").

Valenzuela disagrees with the ALJ's analysis of her migraine pain. She argues that treatment records from the second half of July of 2013 and through the end of 2014 show that her migraines are more frequent and more limiting than the ALJ found. This argument, however, overlooks the court's standard of review. As long as the ALJ's decision is supported by substantial evidence, as it is here, it should be upheld. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). It does not matter if the evidence could support a different conclusion. *Id.* ("Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." ).

Valenzuela argues that the ALJ did not consider the treatment records from the pain specialist, Eross, from July of 2013 through the end of 2014. (Doc. 16, p. 16) She maintains that these treatment records support her argument that her migraines are a severe impairment. These records appear in Exhibits 9F and 13F, which the ALJ does reference in her decision. (Tr. 21, 22, 25, 26) It therefore appears that the ALJ did consider these records. She simply drew a different conclusion from those records than the one that Valenzuela advances here. Valenzuela seems to imply that the ALJ's failure to explicitly discuss Enoss's treatment records was legal error. The court does not agree. "[I]n interpreting the evidence and developing the record, the ALJ does not need to discuss every piece of evidence." *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003).

1 | In her reply brief, Valenzuela argues that the step two error was not harmless because the ALJ did not consider her pain when evaluating her functional limitations. She asserts, for example, that the ALJ limited her to "simple, routine, repetitive tasks with limited social interaction" due to her mental health condition, not her headaches. (Doc. 24, p. 2) In fact, the ALJ explicitly stated that Valenzuela "would be limited to simple work tasks and [limited in] getting along with others *secondary to pain*." (Tr. 28) (emphasis added) She did not derive these limitations from Valenzuela's mental impairments. (Tr. 28) The ALJ properly considered all of Valenzuela's impairments when evaluating her residual functional capacity.

Discussion: Claimant's Testimony

Valenzuela further argues that the ALJ erred when she improperly discounted her subjective testimony of disability. She maintains that substantial evidence in the record supports her testimony of disabling limitations.

If there is medical evidence of underlying impairments "and there is no evidence of malingering, then the ALJ must give specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (punctuation modified). "At the same time, the ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking . . . ." *Id*. "In evaluating the claimant's testimony, the ALJ may use ordinary techniques of credibility evaluation." *Id*. "For instance, the ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct, unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and whether the claimant engages in daily activities inconsistent with the alleged symptoms." *Id*.

In this case, the ALJ found that while "claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms" her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (Tr. 25)

The ALJ noted that Valenzuela received mental health treatment from La Frontera for PTSD (post-traumatic stress disorder) and alcohol dependence. (Tr. 23) She found evidence in the medical record, however, that casts doubt on the claimant's allegation of disabling impairment. For example, the ALJ noted that there are gaps in treatment and "her chief focus was essentially maintaining sobriety." (Tr. 23) An examination on August 20, 2012 showed that Valenzuela was "slightly anxious" but her "memory was intact" and her "insight/judgment was good." (Tr. 24) An examination on February 4, 2014, showed her "attention span and concentration were good." *Id*. "Her affect was appropriate and mood was euthymic." *Id.* "Her thought processes were linear and goal directed and logical." *Id.* "Her insight and judgment were good" *Id.* "Her recent and remote memories were good." *Id.* "Her cognitive functions were grossly intact." *Id*.

The ALJ further found that Valenzuela's allegation of disabling pain was inconsistent with the medical record. Records from the Arizona Neurological Institute indicate that Valenzuela's treatment resulted in "improved range of motion and pain control." (Tr. 25) The ALJ noted that "[t]hroughout her treatment, claimant's musculoskeletal examinations were normal . . . ." (Tr. 25) She received only "conservative" treatment for low back and left elbow pain. (Tr. 25)

Valenzuela's activities of daily living were inconsistent with her allegation of disabling pain. The ALJ explained that Valenzuela "remained active and not sedentary, as noted by her physician." (Tr. 27) She "uses a bicycle and public transportation." (Tr. 27) "[S]he was exercising four days per week." (Tr. 27) "[S]he reported that she does self-care (with no assistance), prepares simple meals (microwave), does laundry, shops for groceries 1-2 times a week, and spends time with her 16-year-old daughter." (Tr. 27)

The ALJ noted that Valenzuela made inconsistent claims about her limitations. At one point she stated that she "is unable to take care of herself, cook, clean, get dressed, or get along with her kids." (Tr. 25, 202) "She later reported that she could take care of her personal needs but at a slower rate." (Tr. 25, 212) The ALJ also noted that Valenzuela "had only brief periods of employment, which raises some questions as to whether her current unemployment is truly

- 12 -

the result of medical problems." (Tr. 27); *see Marsh v. Colvin*, 792 F.3d 1170, 1174 n.2 (9th Cir. 2015) (The ALJ properly found that the claimant's "limited work history also detracts from the credibility of her subjective allegations.")

In this case, the ALJ identified internal inconsistencies in Valenzuela's testimony. She discussed discrepancies between Valenzuela's allegation of disabling impairments and the medical records. She also noted that Valenzuela's scanty work history and her activities of daily living cast doubt on her credibility. The ALJ identified clear and convincing evidence that supports her decision to discount Valenzuela's subjective testimony of disability.

Valenzuela argues to the contrary that the ALJ misreads the medical record. She asserts for example that the ALJ's citation to the record at Exhibit 4E does not support her finding that she uses a bicycle. (Doc. 24, p. 5) The court finds that Valenzuela is correct about that particular citation, but the ALJ's other citations to the record do support her statement that Valenzuela used a bicycle in the past. *See* (Tr. 26) (citing 3F/13 noting that Valenzuela had an accident while riding her bicycle) Valenzuela further asserts that while the medical record states that she exercised four times per week, this is only a single reference form 2012 and does not state what level of exercise she was engaged in. (Doc. 24, p. 5) She argues that while she can perform some activities of self-care, they are not performed in a work setting and therefore do not undermine her credibility. (Doc. 24, p. 5) (*citing Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014)).

She is correct, to a point. Household activities are not generally performed with the same persistence and pace required in the workplace, but they may be considered by the ALJ in evaluating a claimant's level of impairment. *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d, 595, 600 (9th Cir. 1999); *see, e.g., Curry v. Sullivan*, 925 F.2d 1127, 1130 (9th Cir. 1990) (Where the claimant "indicated that she was able to take care of her personal needs, prepare easy meals, do light housework, and shop for some groceries," the court found that "[a]n ability to perform such activities may be seen as inconsistent with the presence of a condition which would preclude all work activity.").

1 | Valenzuela is correct when she notes that her record of daily activities is not necessarily
2 | incompatible with her claim of disability. It is, nevertheless, *some* evidence that she can
3 | perform work-related tasks and is not disabled. She is correct when she states that there is
4 | substantial evidence to support her claim to disabling limitations. But, as the court noted above,
5 | this argument overlooks the court's standard of review. The court does not reevaluate the
6 | evidence de novo. Instead, the court determines whether the ALJ's decision is supported by
7 | substantial evidence and free from legal error. "Where evidence is susceptible to more than one
8 | rational interpretation, the [Commissioner's] decision should be upheld." *Orn v. Astrue*, 495
9 | F.3d 625, 630 (9th Cir. 2007).

Valenzuela further argues that the ALJ improperly discounted the opinion of disability given by her treating physician, Donald R. Smith, M.D. "Because treating physicians are employed to cure and thus have a greater opportunity to know and observe the patient as an individual, their opinions are [ordinarily] given greater weight than the opinions of other physicians." *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996). If the treating physician's opinions are uncontradicted, the ALJ may disregard them only after giving clear and convincing reasons for doing so. *Id*. The ALJ may reject the treating physician's contradicted opinion only if she sets forth "specific and legitimate reasons supported by substantial evidence in the record." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.1996) (punctuation modified). In this case, Smith's opinion of disability is contradicted by the medical opinion of the non-examining state agency physicians. Accordingly, Valenzuela argues that the ALJ failed to give specific and legitimate reasons for discounting Smith's opinions. (Doc. 24, p. 6)

In this case, Smith submitted a medical source statement in which he opined that Valenzuela has profound mental limitations that preclude her ability to work. *See* (Tr. 823) The ALJ, however, discounted his statement "because it is not consistent with, or supported by, the treatment records from La Frontera." (Tr. 24) The ALJ's explanation was brief, but sufficient under the circumstances. Moreover, the court notes that Smith's opinions are not supported by his own medical records. For some reason, his treatment records were never made part of the case record. (Tr. 275) *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir.

2004) (The ALJ may discount "treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole . . . or by objective medical findings.").

Valenzuela further argues that the ALJ erred by discounting the opinion of the treating clinician, Janet San Nicholas. (Doc. 16, p. 21); see (Tr. 25, 1253) In December of 2015, San Nicholas wrote an evaluation of Valenzuela's mental condition. (Tr. 1253) She opined that Valenzuela's mental impairments result in "drastic restrictions to her everyday life functioning in all aspects of her life." *Id*.

A treating clinician is not an "acceptable medical course" in the eyes of the Social Security Administration. Her opinion is not given the same level of deference. *See* 20 C.F.R. 416.913; *see also* SSR 06-03p "The ALJ may discount testimony from these 'other sources' if the ALJ gives reasons germane to each witness for doing so." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (punctuation modified).

Here, the ALJ discounted San Nicholas's opinions because they were too restrictive, not consistent with the treatment records from La Frontera and not supported by the evidence of record. Moreover, the ALJ found Valenzuela's credibility suspect because of her poor work history. (Tr. 25)

The ALJ's decision is supported by substantial evidence. Her decision to discount the opinion of the treating physician, Smith, and the mental health clinician, San Nicholas, was not legal error. Accordingly,

IT IS ORDERED that the Commissioner's final decision in this matter is AFFIRMED. The Clerk of the Court is instructed to enter judgment accordingly and close this case.

DATED this 27th day of February, 2018.

*Leslie A. Bowman*
Leslie A. Bowman
United States Magistrate Judge